**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 21 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JERALD WAYNE HARJO,

Petitioner-Appellant,

v.

GARY GIBSON, Warden, Oklahoma
State Penitentiary; DREW
EDMONDSON, Attorney General of
the State of Oklahoma,

Respondents-Appellees.

No. 99-7041
(D.C. No. 97-CV-82-S)
(E.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **BRORBY**, and **MURPHY**, Circuit Judges.

---

Petitioner was convicted of first degree murder.[1] The jury found two aggravating circumstances–the murder was heinous, atrocious, or cruel and the murder was committed to avoid arrest or prosecution–and fixed punishment at

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1] He was also convicted of first degree burglary, burglary of an automobile, and larceny of an automobile. The jury, however, found petitioner not guilty of first degree rape.

death. The Oklahoma Court of Criminal Appeals affirmed. *See Harjo v. State*, 882 P.2d 1067 (Okla. Crim. App. 1994) (per curiam), *cert. denied*, 514 U.S. 1131 (1995). That court also denied post-conviction relief. *See Harjo v. State*, No. 96-966 (Okla. Crim. App. Jan. 9, 1997) (unpublished). The federal district court denied habeas corpus relief, and we affirm.

FACTS

On the evening of Saturday, January 16, 1988, petitioner, who had been drinking, rode his nephew's bicycle to the home of the victim, sixty-four year old Ruth Porter. Petitioner abandoned the bicycle at the side of the road. A van and a Ford Mustang were parked in Mrs. Porter's driveway. Petitioner took a screwdriver from the van. He piled two cinder blocks under a back bedroom window and, using the screwdriver, removed the screen from the window and entered the home.

Petitioner found a pillowcase, tore two eye holes in it, and placed it over his head. Then, he entered Mrs. Porter's bedroom, where she was asleep. When she awakened, petitioner got scared and put a pillow over her face. He also strangled her with his hands and burned her pubic hair with a cigarette lighter.

After killing Mrs. Porter, petitioner took the keys to the Mustang and drove it to his brother's home. On Sunday, Mrs. Porter's son-in-law found her body and reported the murder. That afternoon, Wewoka Police Officer Blankenship

saw the Mustang, which the police had been looking for, parked at petitioner's brother's home. Officer Blankenship questioned petitioner after giving him *Miranda*[2] warnings. Petitioner denied taking the car and provided another officer with the names of two others who allegedly took the car. A roadblock was set up but these two were never located. Sheriff Sisco took petitioner to the sheriff's office for questioning. The sheriff read petitioner *Miranda* warnings, and petitioner signed a waiver of rights. After over two hours of questioning, and petitioner changing his story, he confessed to the crimes.

## STANDARDS OF REVIEW

Because petitioner filed his habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, it applies to this appeal. *See Williams v. Taylor*, 120 S. Ct. 1479, 1486 (2000). Petitioner will not be entitled to habeas relief unless he can establish that a habeas claim adjudicated by the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent, or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 120 S. Ct. 1495, 1523 (2000). This court will presume the correctness of state court findings of fact, unless petitioner is able to rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

"If[, however, a] claim was not heard on the merits by the state courts, and the federal district court made its own determination in the first instance, we review the district court's conclusions of law *de novo* and its findings of fact, if any, for clear error." *LaFevers v. Gibson*, 182 F.3d 705, 711 (10th Cir. 1999).

## DISCUSSION

## I. HEINOUS, ATROCIOUS, OR CRUEL AGGRAVATOR

Petitioner argues the evidence was insufficient to support the heinous, atrocious, or cruel aggravator because the evidence did not show Mrs. Porter consciously suffered torture or serious physical abuse. The Oklahoma Court of Criminal Appeals determined sufficient evidence existed to support this aggravator: "[petitioner] strangled and suffocated Mrs. Porter with his bare hands. She sustained scratches and bruises on her face, chest, arms and vaginal

-4-

area.  Her lower denture was displaced; her windpipe crushed.  Her pubic hair was singed.  Mrs. Porter struggled prior to her death." *Harjo*, 882 P.2d at 1078.

"Under Oklahoma law, the torture or serious physical abuse required by the properly narrowed [heinous, atrocious, or cruel] aggravator may include infliction of great physical anguish or extreme mental cruelty." *Jones v. Gibson*, 206 F.3d 946, 952 (10th Cir. 2000).  "Conscious physical suffering of the victim must occur before death and any extreme mental distress must result from the petitioner's intentional acts." *Id.* at 952-53.  Conscious physical suffering before death may be proved by statements of the petitioner or any other evidence showing the victim remained alive and conscious during the attack. *See Powell v. State*, 906 P.2d 765, 782 (Okla. Crim. App. 1995).  Mental torture must produce mental anguish in addition to what accompanies the underlying killing. *See Jones*, 206 F.3d at 953.  Analysis focuses on the petitioner's acts and the level of tension created by those acts. *See id.*  Although Oklahoma law does not clearly establish the length of time a victim must be terrorized before there is mental torture, factors such as anticipation of harm and lack of provocation can establish mental torture. *See id.* at 953-54.

Reviewing all of the evidence in the light most favorable to the State, we conclude a rational factfinder could have found the existence of this aggravator beyond a reasonable doubt. *See Lewis v. Jeffers*, 497 U.S. 764, 780-82 (1990).

Although the record does not expressly establish when Mrs. Porter lost consciousness, petitioner stated in his confession that she struggled. This shows that she was conscious during the attack and anticipated harm and that death was not instantaneous. *See Jones*, 206 F.3d at 954. We therefore conclude the Oklahoma Court of Criminal Appeals' determination was reasonable.

## II. MITIGATING EVIDENCE OF REMORSE

Petitioner argues that he was denied his right to present mitigating evidence of remorse. Petitioner had composed a letter to the jury expressing his remorse for Mrs. Porter's death and for the pain suffered by her family. Lacking ability to verbalize his feelings, he had asked counsel to read the letter. The trial court denied permission based upon the State's hearsay objection. The Oklahoma appellate court held the trial court did not deny petitioner his constitutional right to be heard, but rather disallowed him to avoid cross-examination. *See Harjo*, 882 P.2d at 1080 (distinguishing *Green v. Georgia*, 442 U.S. 95 (1979) (per curiam)).

The Oklahoma appellate court correctly distinguished *Green*. In *Green*, a co-defendant had confided to a friend that he had killed the victim. The trial court disallowed the friend's testimony under state hearsay rules. The Supreme Court held that, regardless of whether the proffered testimony was hearsay, exclusion violated due process because the testimony was relevant to punishment,

there was ample evidence to corroborate the confession, and the evidence was reliable. *See Green*, 442 U.S. at 97; *see also Paxton v. Ward*, 199 F.3d 1197, 1214 (10th Cir. 1999) (concluding that, like in *Green,* excluded evidence was highly relevant to punishment and State had considered it sufficiently reliable to warrant dismissal of earlier charges).

Here, however, petitioner's own statement, and not a co-defendant's confession, was at issue. In *Green*, the excluded confession tended to show the defendant's innocence. In this case, the statement tended to show remorse, which petitioner had expressed in his confession, which was presented to the jury, when he stated he did not expect the victim to die and he performed CPR in an attempt to save her. Also, the statement here did not have the same reliability as the confession in *Green*. It was not spontaneous and was not against petitioner's interest.

We agree with other courts that *Green* should not be extended to require a state to admit a defendant's own out-of-court words. *See McGinnis v. Johnson*, 181 F.3d 686, 693 (5th Cir. 1999), *cert. denied,* 120 S. Ct. 955 (2000); *Gacy v. Welborn*, 994 F.2d 305, 316 (7th Cir. 1993); *see also Harvey v. Shillinger*, 76 F.3d 1528, 1534 (10th Cir. 1996) (recognizing right to allocution is not constitutionally protected); *United States v. Barnette*, 211 F.3d 803, 820 (4th Cir. 2000) (deciding criminal defendant has no constitutional right to make unsworn

statement of remorse to jury which is not subject to cross examination)       .

Accordingly, we conclude the Oklahoma appellate court's determination was not

unreasonable.

## III.  MURDER TO AVOID LAWFUL ARREST OR PROSECUTION

Petitioner argues the murder to avoid lawful arrest or prosecution

aggravator is unconstitutional because it applies to any person accused of

murdering a potential witness to a prior felony if there is any evidence of an

attempt by the accused to conceal his identity.  Additionally, petitioner argues the

evidence was insufficient to support this aggravator, because Mrs. Porter did not

know about the other crimes at the time he killed her and she did not identify him.

The Oklahoma appellate court recognized it has consistently found this

aggravator does not create a risk of arbitrary and capricious imposition of the

death penalty.  *See Harjo*, 882 P.2d at 1080-81.  It also determined the evidence

was sufficient to support this aggravator.  *See id.* at 1078.

Instructing the jury according to the statutory language of the aggravator, as

the trial court did, meets constitutional standards.  *See Boyd v. Ward*, 179 F.3d

904, 922-23 (10th Cir. 1999), *cert. denied*, 120 S. Ct. 1188 (2000); *see also Davis

v. Executive Dir. of Dep't of Corrections*, 100 F.3d 750, 769-70 (10th Cir. 1996)

(determining similar Colorado aggravating circumstance was constitutional).

Thus, further narrowing was not necessary, and the Oklahoma appellate court's determination was not unreasonable.

Oklahoma law requires that the predicate crime for this aggravator be separate and distinct from, rather than significantly contributing to, the murder. *See Barnett v. State*, 853 P.2d 226, 233-34 (Okla. Crim. App. 1993). "To support the finding of this aggravating circumstance, the focus is on the defendant's intent, whether proved by the defendant's own statement or through circumstantial evidence." *Fox v. Ward*, 200 F.3d 1286, 1301 (10th Cir. 2000).

Reviewing pursuant to the rational factfinder standard, *see Lewis*, 497 U.S. at 780-82, we conclude the Oklahoma appellate court's determination that there was sufficient evidence to support this aggravator was not unreasonable. Petitioner murdered Mrs. Porter after burglarizing her home and van. He wore a pillow case over his head. He and Mrs. Porter knew each other. He confessed that after she awakened and started struggling he got scared and kept smashing the pillow into her face. Thus, as the Oklahoma appellate court determined, the jury could have reasonably inferred petitioner feared Mrs. Porter would identify him if he did not kill her. *See Harjo*, 882 P.2d at 1078.

## IV. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Petitioner alleges five instances of ineffective assistance of trial counsel: (1) counsel failed to adequately investigate and present additional mitigating

evidence; (2) counsel failed to request additional expert assistance; (3) counsel failed to object to improper prosecutorial comments; (4) counsel failed to object to the removal for cause of six prospective jurors; and (5) counsel failed by the cumulative effect of these errors.

In order to obtain habeas relief, *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which the Oklahoma Court of Criminal Appeals applied, requires petitioner to establish both that his attorney's representation was deficient and that he was prejudiced by counsel's deficient performance. This court need not address both components if petitioner failed to make the requisite showing for one. *See, e.g.*, *Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir. 1998), *cert. denied*, 120 S. Ct. 94 (1999).

A. Failure to Investigate or Present Additional Mitigating Evidence

Petitioner argues counsel should have presented additional mitigating evidence at the sentencing stage, after reasonable investigation and preparation. Because counsel allegedly did not ask petitioner or anyone in his family about potential mitigation witnesses and did not try to interview possible mitigation witnesses, petitioner contends counsel never learned he was generally a good employee, had served for one year with honorable discharge in the National Guard, and had been an excellent prisoner in the county jail. Petitioner believes

-10-

that if this mitigating evidence had been presented, he would not have received the death penalty.

The Oklahoma Court of Criminal Appeals concluded petitioner failed to meet his burden of proving ineffectiveness. *See Harjo*, 882 P.2d at 1078. We conclude this determination was not unreasonable.

Without deciding whether counsel's performance was deficient, we conclude petitioner has failed to show prejudice. None of the evidence petitioner points to would have been particularly helpful. Although petitioner had been a quiet, reliable employee who never caused problems and appeared to get along well with coworkers and supervisors, he had been unemployed for six years. During his twelve months of National Guard service, he had nine unexcused absences. Evidence of a successful incarceration typically is used to show a petitioner would not be a danger to the community if he was incarcerated for life. *See Boyde v. California*, 494 U.S. 370, 382 n.5 (1990); *Skipper v. South Carolina*, 476 U.S. 1, 4, 5 (1986). Whether petitioner would be a possible danger is not at issue in this case, however. If all of this mitigating evidence had been presented, it would have been insufficient to offset, explain, or justify the murder of Mrs. Porter. *See Nguyen v. Reynolds*, 131 F.3d 1340, 1349 (10th Cir. 1997). There is not a reasonable probability that if the jury had considered this

evidence it would have concluded the balance of aggravating and mitigating circumstances did not warrant death.    *See Strickland*, 466 U.S. at 695.

B.  Expert Assistance

Petitioner contends his counsel was ineffective for failing to request additional expert assistance.  The trial court granted a request for a psychiatric expert and authorized counsel to spend up to $750, the usual statutory maximum amount.  Petitioner maintains he needed additional expert assistance because his mental capacity and sanity were at issue.

On post-conviction review, the Oklahoma appellate court decided the record did not support this argument.  The federal district court determined petitioner failed to show prejudice, because petitioner was not entitled to further expert assistance.

Nothing in the record suggests that a reasonable attorney would have believed petitioner's mental state or sanity could have been a significant factor at either stage of trial.    *See Ake v. Oklahoma*, 470 U.S. 68, 74 (1985);    *Mayes v. Gibson*, 210 F.3d 1284, 1289 n.3 (10th Cir. 2000);    *Smith v. Gibson*, 197 F.3d 454, 463 (10th Cir. 1999),    *petition for cert. filed*, (U.S. May 19, 2000) (No. 99-9652).  Considering the totality of the evidence, there is no reasonable probability the jury would have determined petitioner was not guilty of murder. *See Boyd*, 179 F.3d at 914.  Petitioner has failed to prove additional expert

testimony would have changed the outcome at sentencing. *See Moore v. Reynolds*, 153 F.3d 1086, 1098 (10th Cir. 1998), *cert. denied*, 526 U.S. 1025 (1999). Accordingly, petitioner cannot show he was prejudiced because counsel failed to request additional expert assistance. *Cf. Trice v. Ward*, 196 F.3d 1151, 1160 (10th Cir. 1999) (determining funding for expert in excess of $750 would not have altered outcome of either phase of trial because there was no evidence petitioner was insane at time of crimes or incompetent at trial and later evidence of psychological problems would not have been sufficient to overcome three aggravating factors), *petition for cert. filed*, (U.S. May 10, 2000) (No. 99-9518). The state appellate court's decision therefore was not unreasonable.

C.  Improper Prosecutorial Comments

Petitioner argues counsel should have objected to prosecutorial comments improperly defining reasonable doubt during voir dire, stating a personal opinion, evoking sympathy for the victim and her family, misstating the evidence, and denigrating the mitigating evidence. Generally, a prosecutor's improper remark will require reversal of a state conviction only where the remark sufficiently infected the trial so as to make it fundamentally unfair, and, therefore, a denial of due process. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). In assessing fundamental fairness, the comment must be reviewed in the context in which it was made and in light of the entire record. *See Greer v. Miller*, 483 U.S.

756, 765-66 (1987); *Donnelly*, 416 U.S. at 643. If the alleged prosecutorial misconduct denied a petitioner a specific constitutional right, a habeas claim may be established without requiring proof the entire trial was rendered fundamentally unfair by the remark. *See Paxton*, 199 F.3d at 1217.

### 1. Voir Dire

Possibly implicating a constitutional right, petitioner argues counsel should have objected to the prosecutor's comment that "the Court has told you our burden is to prove our case beyond a reasonable doubt. The Court told you that doesn't mean beyond a shadow of doubt or beyond all doubt or one hundred percent certain just said beyond a reasonable doubt." Tr. vol. I at 82. On direct criminal appeal, the Oklahoma appellate court concluded the prosecutor repeated the trial court's explanation of reasonable doubt. *See Harjo*, 882 P.2d at 1075. This determination was not unreasonable. Thus, counsel's failure to object was not prejudicial.

### 2. Sympathy

Petitioner complains the prosecutor improperly asked for sympathy for the victim and her family during first stage closing argument. The Oklahoma Court of Criminal Appeals decided the prosecutor merely reiterated uncontroverted facts that Mrs. Porter was sixty-four years old when she was killed, she struggled for her life, and she was found by her son-in-law who kept his wife from seeing

her mother. *See id.* at 1075-76. This determination was reasonable. Further, the evidence makes it probable the nature of the crime, strangling and suffocating an elderly lady, produced sympathy before the prosecution made any closing remarks. *See Duvall v. Reynolds*, 139 F.3d 768, 795 (10th Cir. 1998). Because the prosecutor's remarks did not render the trial fundamentally unfair, counsel's failure to object was not prejudicial.

### 3. Personal Opinion

Petitioner believes the prosecutor improperly expressed his opinion on petitioner's guilt and deserving the death penalty. The Oklahoma Court of Criminal Appeals agreed that the prosecutor exceeded his bounds and engaged in "improper and reprehensible" conduct when he expressed his personal opinion. *Harjo*, 882 P.2d at 1076. Nonetheless, the court determined the comments were harmless because, in light of its acquittal verdict on the rape charge, the jury did not follow the comments. *See id.* (citing *Chapman v. California*, 386 U.S. 18 (1967)). Accordingly, the court concluded petitioner could not show prejudice due to counsel's failure to object to the remarks. *See id.* at 1077. Petitioner has failed to show the Oklahoma Court of Criminal Appeals unreasonably applied *Chapman*, *see Pickens v. Gibson*, 206 F.3d 988, 996 (10th Cir. 2000), and unreasonably determined petitioner was not prejudiced by counsel's failure to object.

### 4. Misrepresentation of the Evidence

Petitioner believes the prosecutor, during first stage closing argument, invaded the province of the jury and made improper representations concerning the forensic evidence by indicating a positive identification could be made from hair comparisons and saliva samples. The Oklahoma Court of Criminal Appeals determined "[t]he record plainly shows the prosecutor argued inferences from the evidence and did not misstate it." *Harjo*, 882 P.2d at 1076. This determination was not unreasonable. The prosecutor is given reasonable latitude in drawing inferences from the evidence during closing arguments. *See Duvall*, 139 F.3d at 795. Because the prosecutor's representations did not cause the trial to be fundamentally unfair, counsel's failure to object was not prejudicial.

### 5. Negating Mitigating Evidence

Without further explanation, petitioner argues the prosecutor attempted to destroy his right to have the jury consider mitigating evidence and denigrated the mitigating circumstances set forth in the jury's instructions. The Oklahoma Court of Criminal Appeals held the prosecutor's argument went to the weight of the evidence and did not limit the evidence the jury could consider. *See Harjo*, 882 P.2d at 1079. A prosecutor is permitted to comment on the weight to be afforded mitigating evidence. *See Fox*, 200 F.3d at 1299-1300. The state

appellate court's denial of relief therefore was not unreasonable, and counsel's failure to object to the prosecutor's remark was not prejudicial.

D.  Removal of Jurors

Petitioner argues trial counsel failed to object to the removal of six jurors for cause and did not attempt to rehabilitate these jurors.  The Oklahoma Court of Criminal Appeals rejected this argument on direct appeal:

> The record could not be clearer in this regard:  each of the excused veniremen had been thoroughly questioned by the trial judge who made clear throughout the record that mere reservation about the death penalty did not disqualify one from service, and each stated explicitly that under no circumstance could he or she impose the death penalty.  These veniremen were properly removed under *Witherspoon* [*v. Illinois*, 391 U.S. 510 (1968)].  Defense counsel did not fall below the standard of reasonable effectiveness by failing to question them further after each emphatically stated unwavering opposition to the death penalty.

*Harjo*, 882 P.2d at 1077.  This determination was not unreasonable.

E.  Cumulative Effect

Petitioner argues the cumulative effect of counsel's deficient performance created a risk the death sentence was arbitrary and capricious.  Finding no instance of ineffective assistance of counsel, the district court concluded there was no cumulative error.  We agree.  "Cumulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors."  *Moore*, 153 F.3d at 1113

V. *AKE*

Petitioner argues (1) Oklahoma's $750 maximum payment for experts violates *Ake*, 470 U.S. 68, and (2) the federal district court erred in finding that petitioner failed to make a sufficient threshold showing that his sanity or mental capacity would be an issue at trial or sentencing. In light of our resolution of petitioner's argument that his trial counsel was ineffective for failing to request additional expert assistance, we conclude petitioner is not entitled to relief on this argument.

VI. ANTI-SYMPATHY INSTRUCTION

Petitioner argues the trial court effectively prohibited the jury from considering mitigating evidence when it instructed the jury not to consider sympathy at the second stage. On direct appeal, the Oklahoma appellate court found the argument unsupported by the record. *See Harjo*, 882 P.2d at 1079.

The trial court instructed the jury at the first stage not to allow sympathy, sentiment, or prejudice to influence its deliberations. At the second stage, the trial court directed the jury to consider the first stage instructions where appropriate. Also, the court instructed the jury regarding several mitigating circumstances, and directed the jury to consider whether the circumstances existed and whether they were mitigating. Further, the court informed the jury the

[m]itigating circumstances are those which, in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability or blame. The determination of what are mitigating circumstances is for you as jurors to resolve under the facts and circumstances of this case.

O.R. at 102.

Viewing the instructions as a whole, *see Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973), we conclude there was not a reasonable likelihood the jury applied the anti-sympathy instruction in a way that prevented consideration of the mitigating evidence, *see Boyde*, 494 U.S. at 380, 381, 386. The Oklahoma Court of Criminal Appeals' decision therefore was not unreasonable.

## VII. UNANIMOUS FINDING OF MITIGATING CIRCUMSTANCES

Petitioner argues the trial court effectively instructed the jury it was required to find mitigating circumstances unanimously. This argument, as petitioner concedes, is foreclosed by *Duvall*, 139 F.3d at 791-92.

## VIII. CONFESSION

Petitioner argues he did not knowingly, intelligently, and voluntarily waive his right to counsel before confessing to the murder of Mrs. Porter. Rather, he maintains the totality of the circumstances show the confession was a result of his mental limitations, his state of intoxication, his past chronic abuse of alcohol, his lack of sleep or food before his confession, the coercive nature of the interview,

-19-

and the illegal seizure of his tennis shoes without being informed of his right to withhold consent.

On direct appeal, the Oklahoma Court of Criminal Appeals concluded petitioner's confession was knowing despite his consumption of alcohol and low intelligence. *See Harjo*, 882 P.2d at 1071. In so concluding, the court found that (1) he had been given *Miranda* warnings twice; (2) he understood the questions asked; and (3) he understood the importance of his answers. *See id.* The court also determined the confession was voluntary, finding no evidence of exploitation or overreaching by law enforcement. *See id.* at 1071-72 (citing, e.g., *Colorado v. Connelly*, 479 U.S. 157 (1986)). The court noted petitioner's initial elaborate fabrication that another committed the murder indicated he was well aware of the consequences of talking to law enforcement and the totality of the circumstances showed his waiver of the right to remain silent was not invalid due to his consumption of alcohol or his low intelligence. *See id.* at 1072 (citing *Moran v. Burbine*, 475 U.S. 412 (1986)).

A defendant may waive his rights if, considering the totality of the circumstances, the waiver is voluntary, knowing, and intelligent. *See Moran*, 475 U.S. at 421. The waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* A waiver is knowing and intelligent if it was "made with a full

awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.*

The record is devoid of evidence of overreaching by the sheriff or other officers. *See Connelly*, 479 U.S. at 170. Further, there is no real question of petitioner's comprehension of the *Miranda* rights and of the potential consequences of waiving them. *See Moran*, 475 U.S. at 422. Thus, the state appellate court's determination that petitioner's waiver of his *Miranda* rights was voluntary, knowing, and intelligent was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

## IX. SEIZURE OF TENNIS SHOES

Petitioner argues the State failed to provide him with a full and adequate opportunity to litigate whether his Fourth Amendment rights were violated by the seizure of his tennis shoes prior to his confession. Petitioner believes the state courts failed to conduct a hearing to determine whether exigent circumstances existed justifying immediate seizure of the tennis shoes.

The trial court ruled there was probable cause to believe petitioner was involved in the murder and therefore it was proper to seize the shoes. On direct appeal, the Oklahoma Court of Criminal Appeals first determined petitioner did not consent to the seizure of the tennis shoes. *See Harjo*, 882 P.2d at 1073. The court decided probable cause existed to believe the shoes were evidence of the

murder and immediate seizure was reasonable due to exigent circumstances: (1) tennis shoe footprints were the only ones found at the crime scene; (2) petitioner admitted being at Mrs. Porter's home; (3) petitioner stated the alleged murderer wore boots; and (4) petitioner could have destroyed the shoes or their tread. *See id.* 1073-74 (citing *Cupp v. Murphy* , 412 U.S. 291 (1973); *Brinegar v. United States* , 338 U.S. 160 (1949)). Concluding the claim was fully and fairly considered at the state court level, the federal district court declined, pursuant to *Stone v. Powell* , 428 U.S. 465 (1976), to address the merits of the claim that there were no exigent circumstances justifying warrantless seizure of the shoes during interrogation.

"[W]here the State has provided an opportunity for a full and fair litigation of [the] Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at this trial." *See Stone* , 428 U.S. at 494 (footnote omitted); *cf. Locks v. Sumner* , 703 F.2d 403, 408 (9th Cir. 1983) (full and fair hearing even though state appellate court considered evidence not offered at suppression hearing). The transcript from the evidentiary hearing, which lasted more than two days, confirms that petitioner had a full and fair opportunity to litigate his Fourth Amendment claims. The federal district court therefore properly declined to address the merits of this claim.

The judgment of the United States District Court for the Eastern District of Oklahoma is AFFIRMED.

Entered for the Court

Deanell Reece Tacha
Circuit Judge